Jerry D. SKINNER, Plaintiff,

v.

Judge Dale E. RUIGH and the Iowa
District Court for Story County,
Defendants.

No. 83–330.

Supreme Court of Iowa.

June 13, 1984.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for plaintiff.

Thomas J. Miller, Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for defendants.

Considered by McCORMICK, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

McCORMICK, Justice.

This is an original certiorari action challenging a contempt judgment of the district court. The court, by Judge Dale E. Ruigh, adjudicated plaintiff Jerry D. Skinner to be in contempt and sentenced him under Iowa Code section 598.23 (1983) for nonpayment of court-ordered child support. Because we find no merit in Skinner's challenge to the judgment, we annul the writ.

The questions are whether the district court had authority to adjudge Jerry in contempt under section 598.23, whether the court erred in finding his failure to pay support was willful, whether the jail sentence constituted imprisonment for debt in violation of Article I, section 19 of the Iowa Constitution, and whether the sentence violated Jerry's rights to due process and equal protection in violation of Article I,

section 9 of the Iowa Constitution and the fourteenth amendment of the United States Constitution.

Jerry acknowledges that the third question was resolved adversely to his position in *In re Marriage of Lenger*, 336 N.W.2d 191, 192–93 (Iowa 1983). He also acknowledges that the fourth question was resolved against his position in *Lamb v. Eads*, 346 N.W.2d 830 (Iowa 1984). Because we adhere to those holdings, they are dispositive on the third and fourth questions. We thus address in detail only the first and second questions. Before doing so, we summarize the relevant evidence.

Jerry was divorced from Carmella Skinner in Illinois in 1973. Carmella was awarded custody of the parties' three minor children, and Jerry was ordered to pay $350 per month child support. Subsequently the parties moved to Iowa. In 1975 Jerry filed an application in the Iowa district court in Story County to modify the decree in several respects relating to child support and visitation. Modification was ordered in 1976. In 1981 Carmella applied for modification increasing child support, and the court increased the obligation from $350 to $450 per month. When Jerry fell behind in his support payments in 1982, Carmella commenced a contempt action.

The contempt case was tried in 1983. The court adjudicated that Jerry was in contempt for willful nonpayment of a portion of the support due from January 1982 through September 1982. The court ruled that Jerry's nonpayment of support after October 1, 1982 was not willful because he was indigent during that period. Jerry was sentenced to 20 days in jail for contempt but mittimus was withheld conditioned upon Jerry's making certain payments to reduce the delinquency by specified dates. He then filed the present certiorari petition, which this court granted, staying the sentence under bond.

I. *Jurisdiction.* Jerry contends that the district court had no authority to entertain the contempt action under chapter 598 because the child support order had not been entered under that chapter. He un-

successfully urged the same contention in district court. We find it is without merit. We need not decide whether the 1982 modification order was entered pursuant to chapter 598 because the court's contempt jurisdiction is not dependent on that fact.

■ Chapter 665 comprehensively regulates the contempt power and supplants the common law to that extent. *Wilson v. Fenton*, 312 N.W.2d 524, 528 (Iowa 1981). Illegal resistance to any court order is a contemptuous act pursuant to section 665.2(3). Such an act is subject to the penalties in section 665.4 "where not otherwise provided."

Section 598.23 constitutes a specific provision for a different penalty for contempt based on disobedience of orders in dissolution cases. The statute provides in material part:

> If any party against whom any temporary order or final decree has been entered shall willfully disobey the same, or secrete his property, he may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

This provision does not distinguish between orders in dissolution cases within and outside chapter 598. Our contempt cases involving orders in domestic relations actions recognize that chapter 665 provides the procedural framework for the contempt case, and section 598.23 defines the applicable penalty. *See, e.g. Opperman v. Sullivan*, 330 N.W.2d 796, 797 (Iowa 1983); *Bevers v. Kilburg*, 326 N.W.2d 902, 902–04 (Iowa 1982); *Lutz v. Darbyshire*, 297 N.W.2d 349, 352–53 (Iowa 1980).

The procedure in this case is consistent with that followed in *Harkins v. Harkins*, 256 Iowa 207, 127 N.W.2d 87 (1964), *overruled on other grounds*, *McNabb v. Osmundson*, 315 N.W.2d 9, 15 (Iowa 1982), where an Iowa modification of an Illinois alimony decree was involved. Iowa Code sections 252A.18–.19 now provide a method for registering foreign support orders and enforcing them in Iowa courts in the same manner as domestic orders. The material

events in the present situation preceded the effective date of those provisions, but, because the present situation involved an Iowa order, we need not determine in this case the authority of an Iowa court to punish for contempt of an out-of-state decree under section 598.23 in the absence of such provisions.

Jerry cites *Adams v. Braginton*, 159 N.W.2d 479 (Iowa 1968), in support of his contention. The *Adams* court held that contempt could not be penalized under the predecessor of section 598.23 where an award of custody and support had been made under the court's inherent equity power rather than as part of an action under chapter 598. The court said it was referred to no authority outside chapter 598 and found none that gave the district court power to cite and punish for contempt when acting under its inherent power to order child custody and support. *See* 159 N.W.2d at 483. No brief or argument was presented in behalf of the district court in the *Adams* case. *See id.* at 482. Perhaps as a consequence the district court's common law contempt power and the provisions of chapter 665 were not considered. Although the *Adams* holding is factually distinguishable, we now overrule the case rather than merely distinguish it.

■ We hold that the district court had authority to punish for contempt based on willful violation of its child support order, using the procedures provided in chapter 665 and the penalty provided in section 598.23.

II. *The willfulness issue.* Jerry challenges the district court's finding that he willfully failed to pay child support on two grounds. The first ground is that because the contempt action was criminal in nature the due process clause of the fourteenth amendment to the United States Constitution required that the willfulness element be proved without shifting the burden of proof to him. The second ground is that the evidence is insufficient to sustain the finding.

■ A. *Burden of proof.* This court explained the burden of proof in *Lamb v. Eads:*

The general rule holds that an applicant for a contempt citation establishes a prima facie case by proving the duty which is on the contemner and the contemner's failure to perform the duty. The contemner then has the burden of showing he could not perform the duty, if he relies on that ground. [citations] The principle that places the burden on the contemner to show that his default was not willful necessarily means that upon the contemner's failure to make the requisite showing the default may be found to be willful.

346 N.W.2d at 832. The contemner's burden is a burden of production on the defense of inability to perform the duty rather than a burden of persuasion. *See Harkins,* 256 Iowa at 211, 127 N.W.2d at 89–90. The burden of persuasion on the willfulness issue does not shift from the contemnee. Moreover, even if the contemnee makes a prima facie case and the contemner introduces no evidence, the court must still weigh the contemnee's evidence to determine whether the elements of the offense have been established by the requisite proof.

■ The same allocation of burden of proof was involved in *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), relied on by this court in *Lamb.* It makes no difference that the contempt proceeding in *Rylander* was characterized as civil rather than criminal. Due process does not preclude placing the burden of production on an accused person on a defensive issue in a criminal case.

■ The present situation is analogous to the burden of proof allocation when diminished responsibility is urged as a defense to a specific intent crime. The State retains its burden of persuasion and initial burden of production on the issue of specific intent. The accused has the burden to produce evidence on the defense, and when such evidence is introduced it must be considered by the jury in determining whether the State met its burden to prove specific intent. *See State v. Rinehart,* 283 N.W.2d 319, 320 (Iowa 1979), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980). Similarly the contemnee has the burden of persuasion and initial burden of production on the willfulness element of a contempt charge. When inability to pay is urged as a defense, the alleged contemner has the burden to produce evidence on that issue. The court then considers all of the evidence in determining whether the contemnee has proved willfulness.

■ This allocation of the burden to produce evidence is within the constitutional limits fixed for criminal cases in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). We find no merit in Jerry's due process attack on the allocation of burden of proof on the willfulness element.

No question exists in this case concerning whether the contempt had to be proved beyond a reasonable doubt. Our prior cases have required clear and satisfactory proof. *See, e.g., Lutz,* 297 N.W.2d at 353. Decisions from other courts suggest that proof beyond a reasonable doubt is required when nonpayment of support is punished as criminal contempt.[1] We do not reach the issue in the present case because the district court found contempt was proved beyond a reasonable doubt in this situation.

■ B. *Sufficiency of evidence.* Our cases impose a special standard of review in contempt cases. Although our review is

---

1. See, e.g., *Ridgway v. Baker,* 720 F.2d 1409, 1413–15 (5th Cir.1983); *Diggs v. Diggs,* 663 P.2d 950, 952 (Alaska 1983); *Ward v. Ward,* 273 Ark. 198, 202, 617 S.W.2d 364, 366 (1981); *In re S.L.T.,* 180 So.2d 374, 378 (Fla.Ct.App.1965); *Furtado v. Furtado,* 380 Mass. 137, 142, 402 N.E.2d 1024, 1031 (1980); *Langford v. Langford,* 253 Miss. 483, 485, 176 So.2d 266, 267 (1965); *Halverson v. Halverson,* 189 Neb. 489, 492, 203 N.W.2d 452, 454 (1973); *Schroeder v. Schroeder,* 100 Wis.2d 625, 637, 302 N.W.2d 475, 482 (1981).

not de novo, this court examines the evidence to ensure that proof of the contempt is clear and satisfactory. *Callenius v. Blair*, 309 N.W.2d 415, 419 (Iowa 1981). Assuming that the standard for review of the sufficiency of evidence in a criminal case is more rigorous, we will also apply the substantial evidence test of *State v. Robinson*, 288 N.W.2d 337, 340 (1980) in this case. We do not decide whether we are required to do so.

The district court found Jerry in contempt for failure to meet his child support obligation between January 1982 and September 1982. His payments and delinquency were as follows:

| Month | Amount Paid | Amount Due | Delinquency |
|---|---|---|---|
| January | $ 337.50 | $ 450.00 | $ 112.50 |
| February | 225.00 | 450.00 | 225.00 |
| March | 412.50 | 450.00 | 37.50 |
| April | 400.00 | 450.00 | 50.00 |
| May | -0- | 450.00 | 450.00 |
| June | 112.50 | 450.00 | 337.50 |
| July | 112.00 | 450.00 | 338.00 |
| August | -0- | 450.00 | 450.00 |
| September | -0- | 450.00 | 450.00 |
| TOTAL | $1,599.50 | $4,050.00 | $2,450.50 |

During this period Jerry was employed as an optician, earning $300 a week gross income and one $500 bonus. In addition to regular living expenses, he paid a $1000 car repair bill, a dental bill and an unspecified amount because of a rental default by his roommate during that period. Jerry's only property was his car worth $800 to $900, and he had no other source of income.

The issue is not whether all of Jerry's default was willful. Contempt was sufficiently shown if some of the default relied on was willful. *See Harkins*, 256 Iowa at 212–13, 127 N.W.2d at 90–91, and *Bixby v. Bixby*, 253 Iowa 1172, 1177, 115 N.W.2d 852, 855 (1962). Applying both the traditional and criminal case standards of review, we find sufficient proof of willfulness in this case. During the period involved Jerry fell $2,450.50 behind on child support payments he previously had been able to make. His evidence on his defense of inability to pay did not satisfactorily identify all of the amounts of his other obligations or the justification for giving them priority over his child support obligation. The district court was warranted in

finding he was in contempt for falling behind in his child support payments to the extent he did.

We thus find no merit in Jerry's certiorari challenge to his contempt conviction and sentence. We note, however, that the district court's conditional sentence is subject to the limitations specified in *Greene v. District Court of Polk County*, 342 N.W.2d 818, 821 (Iowa 1983).

WRIT ANNULLED.